*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BAUR, Minors.

UNPUBLISHED
May 7, 2019

No. 345518
Montmorency Circuit Court
Family Division
LC No. 13-003381-NA

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the circuit court's termination of her parental rights to three of her children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. BACKGROUND

Respondent is the biological mother of four children, all with the same father. Only respondent's three youngest children—a daughter, CB (born 2001) and two sons, TRB (born 2006) and ZB (born 2013)—are at issue in this appeal. Nevertheless, petitioner's involvement with respondent's family dates back to 2013, at which time respondent's eldest daughter, TIB (born 1998), reported that respondent had punished her for the last seven years by punching her in the stomach and striking her head, back, and face. TIB also disclosed that her father had sexually abused her for the past four years.

The circuit court took jurisdiction over the children and TIB was removed from respondent's care. Eventually, the father's parental rights to all four children were terminated and he was ordered to have no contact with them. Respondent was ordered to comply with a treatment plan requiring her to protect her children from sexual abuse, support her children, obtain financial and emotional stability, and acquire appropriate parenting skills. Respondent complied with her treatment plan, TIB was returned to her care, and the circuit court terminated its jurisdiction over the children in August 2014.

In early 2016, however, the circuit court removed the three younger children from respondent's care, finding that respondent was not attending to the children's medical and educational needs. Additionally, respondent had been delegating care of TRB and ZB to CB, who was only 14 years old at the time, and had allowed TRB and ZB to visit with their father.

-1-

Respondent had instructed the children not to disclose the visitation and had become angry at them when they did so. The circuit court again ordered respondent to comply with a treatment plan, which contained nearly identical goals to the previous plan.

Over the next 18 months, respondent's progress on her treatment plan was inconsistent. While respondent did complete a parenting program, caseworkers reported that respondent did not appear to benefit from the strategies discussed therein. Respondent sporadically attended individual counseling and her emotional stability was poor; moreover, respondent cancelled many family-therapy sessions. Respondent continued to struggle financially and had poor money-management skills. The children's father had been incarcerated for his sexual abuse of TIB, but was released in 2014. From 2014 to 2017, the father lived across the street from respondent. Respondent continued to struggle to maintain her housing and sporadically attended parenting time.

Given respondent's inconsistent compliance, in February 2018, petitioner filed a supplemental petition to terminate respondent's parental rights. Between the filing of the petition and the August 2018 termination hearing, respondent reengaged with her services. Nevertheless, respondent was still financially unstable, and had not provided a pay stub to caseworkers in several months. Moreover, respondent had moved into a home that was just down the road from where the children's father had moved. Respondent did, however, begin attending therapy consistently and appeared to be progressing mentally.

The circuit court found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), based particularly on respondent's history of inconsistent compliance with her treatment plan. The circuit court noted that respondent had little bond with her three youngest children[1] and that the children were thriving in their placements and found that termination was in their best interests. This appeal followed.

## II. ANALYSIS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Once a ground for termination is established, the trial court must order termination of parental rights if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5). "We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); see also MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

---

[1] TIB had reached the age of majority several years earlier.

Respondent first challenges the trial court's conclusion that statutory grounds supported termination of her parental rights. The circuit court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding the first ground—continuing conditions—the children were brought into care most recently because respondent was unable to provide them with financial and housing stability, was unable to maintain a safe and appropriate home environment, and lacked emotional and parenting skills. These were the same conditions that had been present since petitioner became involved with the family five years earlier. Despite periods of compliance with her treatment plan, including a period of progress after the filing of the termination petition, respondent had still failed to rectify several conditions at the time of trial. Although respondent had recently reengaged with therapy, respondent was largely absent from her therapy sessions for significant periods of time during the course of petitioner's involvement. Moreover, despite petitioner's assistance, respondent had failed to maintain financial stability. Most recently, respondent was working weekends as a dishwasher, earning $200 per week and, in the months preceding the termination trial, had not provided verification of this income to petitioner.

Shortly before trial, respondent did obtain a home that appeared appropriate for the children, but that home was on the same street as the home of the children's father, who had sexually abused respondent's eldest daughter. This move is particularly troublesome given indications that respondent had earlier allowed the father to contact the children and had

reprimanded the children for failing to keep the contact a secret. Respondent completed some parenting courses, but failed to benefit from these courses. Indeed, respondent's son reported that respondent was "physically hitting, yelling and swearing at him, and drinking big beer bottles" as recently as February 2017. Respondent's caseworkers reported that, despite attending parenting classes, respondent had no viable plan to care for her children's special needs and had not found appropriate childcare. Respondent had not demonstrated an ability to engage the substantial state resources offered to her—including food, cash, and Medicaid assistance—and, perhaps most egregiously, respondent was absent from numerous parenting-time sessions during the last five years.

This Court has long viewed child-protective proceedings as continuous actions. See *In re LaFlure*, 48 Mich App 377, 391; 210 NW2d 482 (1973). Despite respondent's efforts in recent months to prevent the termination of her parental rights, we are unable to overlook respondent's lengthy history of sporadic compliance with her treatment plan. Despite five years of services, respondent is in little better position to provide for her children's financial, emotional, or physical well-being. Because the conditions leading to adjudication continue to exist, we agree with the trial court that MCL 712A.19b(3)(c)(*i*) supported termination of respondent's parental rights. Given that "the petitioner need only establish one ground for termination," we need not address MCL 712A.19b(3)(g) or (j). *In re Trejo*, 462 Mich at 360.

Respondent also argues that the trial court erred by finding that termination was in her children's best interests. "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id*., quoting *In re Olive/Metts*, 297 Mich App at 41-42. Other relevant factors include any relevant "history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

Given respondent's inconsistent attendance at parenting time, none of the children had a strong bond with her. Moreover, as recognized by the circuit court, TRB and ZB both have special medical needs which respondent was ill equipped to address, particularly given respondent's failure to benefit from the services provided by petitioner. Despite struggling academically and socially while in respondent's care, in her foster placement, CB was receiving straight "A's" in school, was involved in sports, and had developed a circle of friends. TRB and ZB were similarly thriving in their placement. At the time of termination, the children had been in non-relative foster care for more than two and a half years and deserved stability and finality. As evidenced by respondent's history of only partial compliance with her treatment plan and the considerable financial, housing, parenting, and emotional issues respondent still needed to address, it is clear that respondent was unlikely to be able to provide her children with a suitable

home within any reasonable time.  The trial court did not err by finding that termination was in the children's best interests.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood